865 So.2d 284 (2004)
STATE of Louisiana, Appellee
v.
Rufus HAMPTON, III and Louis Hargrove, III, Appellants.
Nos. 38,017-KA to 38,022-KA.
Court of Appeal of Louisiana, Second Circuit.
January 28, 2004.
*287 Louisiana Appellate Project, by Paula C. Marx, Carey J. Ellis, III, for Appellants.
John Schuyler Marvin, District Attorney, Sherburne Sentell, III, John M. Lawrence, Assistant District Attorneys, for Appellee.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
A jury convicted the defendants Hampton and Hargrove of armed robbery, conspiracy to commit armed robbery, and aggravated second degree battery of the victim, Eldred Ford Lowe, Jr. For each defendant, the trial court imposed consecutive *288 sentences of 50 years for the armed robbery, 25 years for the conspiracy, and 15 years for the aggravated second degree battery.[1] The court denied timely motions for reconsideration of sentence. Defendants appeal the convictions and sentences. For the reasons stated herein, we affirm.

Facts
Around 9:00 p.m. on the evening of May 30, 2001, Eldred Ford Lowe, Jr., a teacher at Northwest Louisiana Technical College, pulled his car into his driveway at 804 Claiborne Street in Minden. As he exited his car, he saw a small red sport utility vehicle stop at the end of his driveway. Illuminated by a bright street lamp, Lowe could see that the vehicle was driven by a black male. The passenger, also a black male later identified as the defendant Hampton, got out of the vehicle armed with a pistol aimed at Lowe and approached him shouting profanities and demanding money. Hampton grabbed Lowe and hit him several times in the face and head with the pistol, knocking him to the ground. Lowe sustained a large gash on the top of his forehead and across his nose. Hampton reached in the victim's pocket and took a money clip holding $154 in cash and several credit cards. Lowe, who remained on the ground, heard Hampton get back into the vehicle, which sped away. Lowe's wife notified authorities and took her husband to the hospital.
Minutes after the robbery, the defendants purchased items from the local Wal-Mart store using Lowe's credit card. Video surveillance tapes showed them arriving at the Wal-Mart in the red Kia Sportage and subsequently making a purchase of items including a cassette tape with one of Lowe's credit cards. Police found several items in the vehicle including a price tag for a pair of Wrangler shorts purchased from Wal-Mart whose bar code identified it as one of the purchases from that store with the victim's credit card.
The state charged both defendants by bill of information with armed robbery, aggravated second degree battery and conspiracy to commit armed robbery.
At trial, Detective Dan Weaver, chief criminal investigator for the Minden Police Department, testified that he was notified of the crime at about 9:20 p.m. on May 30, 2001. Lowe told Detective Weaver that the two black males involved in the robbery were in a small SUV, possibly red or maroon. One man, who was wearing a skullcap, got out of the SUV and committed the robbery; the other man stayed in the vehicle. The police took a picture and made a cast of a footprint at the crime scene that made an unusual oval shape.
The following day, Detective Weaver, spotted a red Kia Sportage matching the description of the robbery SUV occupied by Hargrove in the driver's seat in a store parking lot. Hampton came out of the store and got in the vehicle. Detective Weaver called in other police units. Police subsequently stopped the vehicle for speeding. Hampton was wearing a nylon skullcap such as the one described by the victim. A consent search of the SUV disclosed a .177 caliber pellet pistol hidden in the engine compartment under the hood. Hampton's tennis shoe matched the footprint from the crime scene.
Detective Weaver advised both defendants of their Miranda rights. Hargrove stated that he and Hampton had been in *289 Minden on the night of the robbery and had returned to Shreveport. Hampton stated that he had not been in Minden that night.
The victim viewed a photographic lineup and immediately picked Hampton. The victim also identified a photo of an SUV that he described as looking "mostly like" the one involved in the robbery. The photo depicted the red Kia Sportage that had been stopped by police and occupied by Hargrove and Hampton. No identifiable fingerprints were found on the pistol. However, DNA evidence obtained from the pistol matched the DNA of the victim.
Detective Scott Tucker testified that he was the first investigator to arrive at the crime scene. The lighting was good because there was a street light "right there at the street." He noticed the unique footprint and had Detective Weaver make a cast. Tucker went to shoe stores the next day and learned the K-Swiss shoes were only recently introduced into the retail market and were distributed only at Dillard's stores.
The red Kia Sportage was a rental car. Rental papers found in the car authorized Hampton to drive the vehicle. In addition to the items mentioned above, police found a shopping list in the back seat of the Kia. The list matched items purchased with Lowe's credit card. A "2 Pac Outlaws" cassette tape that was purchased with Lowe's credit card was in the player/radio of the Kia. Also, a Minden newspaper with the headline, "Local Teacher Robbed," was in the car.
Bill Fields, Wal-Mart's loss prevention agent, testified that his store routinely runs videotape surveillance in the store. He laid the foundation for playing a videotape of events inside the store on the night of the robbery. He then identified credit card receipts of transactions made with the victim's card on the night of the robbery between 9:15 and 9:23 p.m. The tag found in the back of the Kia matched one of the credit card receipts.
The victim, Eldred F. Lowe, Jr., testified that on the night of the robbery he arrived at his home at about 9:00 p.m. After he got out of his vehicle, he heard a car pull up to the curb "real fast" and stop at the end of his driveway. A black male stepped out of the car. He had what looked like an automatic pistol pointed directly at Lowe. He approached Lowe quickly.
The man had come from the passenger side of a small SUV which was red and relatively new. It was under the street light. Lowe identified State Exhibit 9 as the pistol used by Hampton. Lowe got an unobstructed look at the robber's face. He was wearing a tight-fitting black or dark skullcap. The robber demanded money and hit Lowe three or four times, knocking him to the ground. The robber used the pistol to hit Lowe. The robber put his hand in Lowe's pocket and removed his money clip, driver's license, cash and credit card. Then the robber ran to the SUV. As the SUV pulled away, Lowe noticed the driver appeared to be a black male but Lowe did not see any distinguishing features.
Detective Tucker testified that the victim's house is within a mile of the Minden Wal-Mart. Tucker had viewed the Wal-Mart surveillance videotape numerous times. The state played the tape, which showed the red Kia pulling into the parking lot at 9:00 p.m. Two men got out of the vehicle. One pushed a buggy; the other had a black hat on his head. The next film clip showed the two men buying the Tupac cassette. Tucker said the time displayed on the tape could be off by a few minutes. The next film clip showed the men buying a DVD player. One of the men was wearing *290 shoes with a unique look and distinctive tips. The shoes had a unique red tip on the front, the same as the shoes taken from Hargrove when he was arrested.
A jury convicted the defendants as charged on all counts. The trial court imposed consecutive sentences totaling 90 years at hard labor for each defendant. Defendants now appeal alleging that the evidence is insufficient to sustain the convictions for armed robbery, aggravated second degree battery and conspiracy to commit armed robbery and that the consecutive sentences are harsh and excessive.

Discussion

Sufficiency of Evidence
Although the record does not reflect that either defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App. 2 Cir. 02/26/97), 691 So.2d 1273.
Hampton, the defendant who actually beat and robbed the victim, argues that the evidence is insufficient to support the conviction for conspiracy to commit armed robbery. He specifically argues that the state did not produce any direct evidence of specific intent, a necessary element of conspiracy, citing State v. Guillory, 540 So.2d 1212, 1215 (La.App. 3 Cir.1989). The defense also cites State v. Lowery, 609 So.2d 1125 (La.App. 2 Cir.1992), writs denied 617 So.2d 905 (La.1993), for the proposition that the state failed to prove a "joining of the minds to accomplish a concerted action with an unlawful purpose."
Hargrove, who served as the driver of the getaway car, argues the evidence was insufficient to convict him on any of the charges. He specifically argues there was no physical evidence to link him to the crime scene and that there was no proof of an agreement between him and his co-defendant to commit an armed robbery.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App. 2 Cir. 09/27/00), 768 So.2d 687, writs denied, XXXX-XXXX (La.10/26/01), 799 So.2d 1150, 2001-2087 (La.04/19/02), 813 So.2d 424. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App. 2 Cir. 09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
*291 All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. La. R.S. 14:24.
To convict a defendant of armed robbery, the state is required to prove: (1) a taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Jeselink, 35,189 (La.App. 2 Cir. 11/02/01), 799 So.2d 684. A dangerous weapon is any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2(3).
Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury. "Serious bodily injury" is defined as injury which involves, inter alia, extreme physical pain or protracted and obvious disfigurement. La. R.S. 14:34.7.
The elements of the crime of conspiracy are an agreement or combination of two or more persons for the specific purpose of committing a crime and an act done in furtherance of the object of the agreement or combination. La. R.S. 14:26; State v. Valrie, 99-226 (La.App. 3 Cir. 10/13/99), 749 So.2d 11, writ denied, 99-3236 (La.04/20/00), 760 So.2d 343.
For purposes of the crime of conspiracy, specific intent may be inferred from the circumstances of the transaction and actions of the defendant. State v. Johnson, 01-1084 (La.App. 3 Cir. 02/06/02), 817 So.2d 120; State v. Taylor, 96-1043 (La.App. 3 Cir. 02/05/97), 688 So.2d 1262, 1268. The overt act need not be unlawful; it may be any act, innocent or illegal, accompanying or following the agreement, which is done in furtherance of the object of the agreement. State v. Taylor, supra.
The evidence presented in this case sufficiently supports all convictions beyond a reasonable doubt. The jury viewed the videotape of the defendants in Wal-Mart using Lowe's stolen credit card to make purchases which were traced to them through credit card receipts and the shopping list. Mr. Lowe positively identified Hampton as the man who confronted him with a weapon, beat him with it leaving permanent scars, and who took his money clip, cash, credit card and other valuables. The weapon used in the armed robbery and aggravated battery was found in the defendants' car. Hampton was listed as a driver on the rental car agreement.
Viewing the evidence in a light most favorable to the prosecution, the evidence is easily sufficient to sustain the convictions for armed robbery and the aggravated second degree battery.
On the conspiracy charge, a jury could reasonably conclude, based on the testimony of the victim, that there were two black males in the red SUV and Hampton was the passenger who attacked him. Additional evidence permits an inference that Hargrove was the driver at the scene of the robbery. The red Kia identified by the victim was seen on the surveillance videotape just minutes after the robbery arriving at the Wal-Mart parking lot. The defendants were video recorded in the store making purchases with the victim's credit card. Hargrove's distinctive shoes recovered at his arrest were visible on this videotape. Thus, this videotape evidence placed the red Kia SUV, Hargrove and Hampton together within minutes of the robbery. Hargrove was the driver of the vehicle the next day, which tends to confirm he was the unidentified driver at the *292 time of the robbery. The videotape, as well as Lowe's testimony that the driver was a black male and not a female, demonstrates there was no change of driver between the robbery and the car's arrival at the Wal-Mart. Furthermore, Hargrove admitted he traveled to Minden with Hampton on the night of the robbery. All of these evidentiary matters permit the inference that Hargrove was with Hampton at the time of the robbery. The robbery was committed when the driver of the SUV, acting either on a predetermined plan or at Hampton's direction, stopped the vehicle at Mr. Lowe's driveway. This act shows that the driver of the vehicle, Hargrove, was acting in concert with Hampton.
The jury apparently found Hargrove's hypothesis that he was not the driver unbelievable and ruled it out. The jury was within its authority and its findings are supported by the record.
Thus, with respect to both Hampton and Hargrove, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the essential elements of the crimes, including conspiracy, were proven beyond a reasonable doubt.

Sentencing
Hampton and Hargrove argue that the trial court erred in imposing unduly harsh and excessive consecutive sentences in the absence of particular justification for acts arising out of the same course of conduct. Hampton argues that this constitutes a violation of the double jeopardy provisions in that the same conduct is being punished twice. Hargrove argues that the consecutive sentences are excessive and the trial judge failed to state the factors considered and the reasons for imposing consecutive terms.
The double jeopardy claim lacks merit. Each offense involves elements which are not common to the other. The jurisprudence generally approves of consecutive sentences for defendants convicted of conspiracy and of committing the principal offense. State v. White, 35,235 (La.App. 2 Cir. 10/31/01), 799 So.2d 1165; State v. Zeno, 99-69 (La.App. 5 Cir 08/31/99), 742 So.2d 699.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2 Cir. 06/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La.C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2 Cir. 04/02/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2 Cir.), writ denied, 521 So.2d 1143 (1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2 Cir. 03/01/00), 754 So.2d *293 392, 394, writ denied, XXXX-XXXX (La.02/02/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App. 2 Cir. 02/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2 Cir. 04/02/97), 691 So.2d 864.
As to Hargrove, the court considered the facts of the case and noted that, at the time of these offenses, the defendants were wearing clothes and jewelry purchased on a credit card taken from a third party in Shreveport, i.e., the defendants had committed the same crimes before. The court noted for the record that Hargrove had a smirk on his face during trial and at sentencing. He had convictions for theft, illegal possession of stolen things, simple robbery pled down from armed robbery, a parole revocation, possession of marijuana with intent to distribute, another parole revocation, and was on parole at the time of these offenses. He had an unrelated pending charge of possession of a firearm by a convicted felon. Hargrove, now 31, was a third felony offender. The court discussed his educational background, which included graduation from high school. He was not married, but claimed to have four children. His employment record included jobs at restaurants, a car wash, Sears, the Isle of Capri and Hamel's Park. He had not shown any remorse and had thrown gang signs to fellow inmates while talking with the probation officer who was preparing the PSI report. Hargrove said, "Ain't none of that true." The court found a lesser sentence would deprecate the seriousness of the offenses. There was no justification or mitigation noted by the trial court.
As to Hampton, the court again considered the facts of the case and noted that Hampton persisted in claiming he was innocent. He had shown no remorse and "copped an attitude" with the probation officer preparing the PSI report. He smirked and laughed all the way through the trial. His adult record began in 1993 with a simple robbery. Probation was revoked. He was released on parole, but it was revoked four times. He was arrested for auto theft, but was allowed to plead to misdemeanor illegal possession of stolen things. The instant offenses occurred less than two weeks after Hampton's most recent release on parole. The court found no justification or mitigation and again found that a lesser sentence would deprecate the seriousness of the offense. Hampton also had been throwing gang signs while talking with the probation officer for the PSI report. Hampton said that was a lie.
Both defendants are multiple offenders with records involving robbery and theft. The instant offenses were committed in an unnecessarily brutal manner. The individual sentences, therefore, are not excessive.
The jurisprudence holds that when two or more convictions arise from the same act or transaction, or constitute parts of a common scheme or plan, the terms of imprisonment "shall be served concurrently unless the court expressly directs *294 that some or all be served consecutively." La.C.Cr.P. art. 883. It is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App. 2 Cir. 11/01/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App. 2 Cir. 04/05/00), 756 So.2d 1218, writ denied 00-1572 (La.03/23/01), 787 So.2d 1010.
Concurrent sentences arising out of a single cause of conduct are not mandatory, State v. Pickett, 628 So.2d 1333 (La. App. 2 Cir.1993), writ denied 94-0348 (La.05/20/94), 637 So.2d 476; State v. Nelson, 467 So.2d 1159 (La.App. 2 Cir.1985), and consecutive sentences under those circumstances are not necessarily excessive. State v. Williams, 445 So.2d 1171 (La. 1984); State v. Ortego, 382 So.2d 921 (La. 1980), cert. denied, 449 U.S. 848, 101 S.Ct. 135, 66 L.Ed.2d 58 (1980); State v. Mills, 505 So.2d 933 (La.App. 2d Cir.), writ denied, 508 So.2d 65 (1987).
Although La.C.Cr.P. art. 883 favors the imposition of concurrent sentences for crimes committed as part of the same transaction or series of transactions, a trial court retains the discretion to impose consecutive penalties in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App. 2 Cir. 03/05/03), 840 So.2d 675.
Among the factors to be considered are the defendant's criminal history, State v. Ortego, supra; State v. Jacobs, 493 So.2d 766 (La.App. 2 Cir.1986); the gravity or dangerousness of the offense, State v. Adams, 493 So.2d 835 (La.App. 2 Cir.), writ denied, 496 So.2d 355 (1986); the viciousness of the crimes, State v. Clark, 499 So.2d 332 (La.App. 4 Cir.1986); the harm done to the victims, State v. Lewis, 430 So.2d 1286 (La.App. 1 Cir.), writ denied, 435 So.2d 433 (1983); whether the defendant constitutes an unusual risk of danger to the public, State v. Jett, 419 So.2d 844 (La.1982); defendant's apparent disregard for the property of others, State v. Parker, 503 So.2d 643 (La.App. 4 Cir. 1987); and the potential for defendant's rehabilitation, State v. Sherer, 437 So.2d 276 (La.1983), State v. Lighten, 516 So.2d 1266 (La.App. 2 Cir.1987). All of these factors apply to these defendants in favor of consecutive sentences.
However, the jurisprudence requires that when consecutive sentences are imposed, the court "shall state the factors considered and its reasons for the consecutive terms." State v. Green, 614 So.2d 758 (La.App. 2 Cir.1993). A judgment directing that sentences arising from a single course of conduct be served consecutively requires particular justification from the evidence of record. State v. Strother, 606 So.2d 891 (La.App. 2 Cir. 1992), writ denied 612 So.2d 55 (La.1993); State v. Thompson, 543 So.2d 1077 (La. App. 2 Cir.), writ denied, 551 So.2d 1335 (1989).
In this case, the court did not specifically state any reasons for making the sentences consecutive, even though the court discussed many of the factors prior to imposing the sentences that would support consecutive sentences. Ordinarily, remand to the sentencing court is required for specific articulation of reasons for running the sentences consecutively.
Recently, however, the jurisprudence has moved away from requiring remand under certain circumstances. In State v. Jarrett, 37,928 (La.App. 2 Cir. 12/10/03), 862 So.2d 440, we affirmed the trial court's imposition of consecutive sentences even though it did not specifically state the reason for consecutive sentences, but discussed *295 during sentencing certain factors that supported the ruling. Similarly, in State v. Blanchard, 03-0612 (La.App. 5 Cir. 11/12/03) 861 So.2d 657, the Fifth Circuit held that the trial court did not err in when it ordered the defendant to serve a DWI, third offense, sentence to run consecutively to the first degree vehicular negligent injuring sentence, even though the trial court failed to give any reasons justifying the consecutive nature of the sentence, but the record provided adequate facts to support a consecutive sentence. In State v. Bradley, 02-KA-1130 (La.App. 5 Cir. 03/11/03), 844 So.2d 115, 118, the court concluded in obiter dicta that the failure to articulate specific reasons for imposing a consecutive sentence does not require remand if the record provides an adequate factual basis to support a consecutive sentence. The Bradley court reasoned:
We do note that LSA C.Cr.P. art. 883 does not specifically require the trial court state reasons justifying the imposition of a consecutive sentence when the crimes arise out of a single course of conduct. Rather, the history of the jurisprudence reveals that the requirement for articulating specific reasons for imposing a consecutive sentence is based on LSA C.Cr.P. art. 894.1, which requires a sentencing court to "state for the record the considerations taken into account and the factual basis therefore in imposing sentence." State v. Franks, 373 So.2d 1307, 1308 (La.1979). Over time, the Louisiana Supreme Court has found that the failure to articulate reasons for sentence pursuant to Article 894.1 does not require a remand when the sentence imposed is not "apparently severe" and there is an adequate factual basis for the sentence contained in the record. State v. Robicheaux, 412 So.2d 1313, 1319 (La.1982). Therefore, it logically follows that the failure to articulate specific reasons for imposing a consecutive sentence also does not require a remand if the record provides an adequate factual basis to support a consecutive sentence.
Although the sentences imposed on the defendants herein are admittedly severe, we find the Bradley court's reasoning persuasive in this instance. The trial court in this case reviewed the factors relevant to imposition of consecutive sentences although it did not expressly state the "magic words" referring to La. C.Cr.P. art. 894.1. Cf. State v. Jackson, 552 So.2d 445 (La.App. 4 Cir.1989). (The fact that the sentencing court did not specifically use the phrase, "The reasons for these consecutive sentences are as follows:," is of no consequence where the sentencing transcript clearly indicates that the sentencing court explained the reasons for sentencing as they pertained to the sentence as a whole, including reasons for the imposition of consecutive sentences.) In this instance, the sentencing transcript reflects a long recitation of each defendant's criminal history and the instant crimes for which the sentences were being imposed. With respect to Hargrove, the court noted that he had prior convictions for theft, illegal possession of stolen things, simple robbery pled down from armed robbery, a parole revocation, possession of marijuana with intent to distribute, another parole revocation, and was on parole at the time of these offenses. He had an unrelated pending charge of possession of a firearm by a convicted felon. Hargrove was a third felony offender. Additionally, the crime was particularly viciousthe victim was pistol-whipped even though he offered no resistance. The victim remains fearful for his safety due to the brutality of this crime. Hargrove showed no remorse and *296 his parole violation record indicates he poses a perennial risk to society.
Likewise, the court reviewed Hampton's criminal history. His adult record began in 1993 with a simple robbery. Probation was revoked. He was released on parole, but it was revoked four times. He was arrested for auto theft, but was allowed to plead to misdemeanor illegal possession of stolen things. The instant offenses occurred less than two weeks after Hampton's most recent release on parole. Although Hampton maintained that he was innocent, the evidence overwhelmingly supports his conviction, and it was Hampton who actually performed the brutal pistol-whipping of Mr. Lowe, resulting in stitches on his head and nose and permanent scarring. Mr. Lowe continues to suffer from the psychological effects of this crime. Hampton has shown no remorse. His record of parole violations indicates he is a continuing menace to society.
In view of these facts and the applicable jurisprudence, we conclude that the facts clearly support consecutive sentences and remand is not required.

Conclusion
For these reasons, the convictions and consecutive sentences of the defendants are affirmed.
CONVICTIONS AND SENTENCES AFFIRMED.
NOTES
[1] The trial court's failure to state that the sentences for the armed robbery and the conspiracy convictions are to be served without benefits will be corrected automatically by operation of La. R.S. 15:301.1. See State v. Klasek, 843 So.2d 646, 37,114 (La.App.2d Cir.4/11/03), writ denied 860 So.2d 1149, XXXX-XXXX (La.12/12/03).