954 So.2d 300 (2007)
STATE of Louisiana, Appellee
v.
Derek M. DOWDEN, Appellant.
No. 41,939-KA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 2007.
*302 Tommy K. Cryer, Shreveport, for Appellant.
Paul J. Carmouche, District Attorney, Ron Christopher Stamps, Tommy J. Johnson, Assistant District Attorneys, for Appellee.
Before WILLIAMS, STEWART & SEXTON (Pro Tempore), JJ.
SEXTON, J.
Defendant, Derek Dowden, was charged with armed robbery, a violation of La. R.S. 14:64. Defendant waived trial by jury and, after a bench trial on December 12, 2005, was found guilty as charged. Following his conviction, the State filed a supplemental bill of information accusing him of being a second-felony offender under the provisions of La. R.S. 15:529.1; Defendant admitted to being a habitual offender. Defendant filed a motion for new trial in March 2006 that was heard and denied in July 2006. In August 2006, the court sentenced Defendant to 30 years at hard labor without benefits. Finding that Defendant was armed with a firearm during the robbery, the court, relying on the provisions of La. C. Cr. P. art. 893.3, added an additional 5 years to the sentence, to be served consecutively. Defendant now appeals. For the reasons set forth herein, Defendant's conviction and sentence for armed robbery are affirmed. The additional 5-year sentence imposed for use of a firearm during the robbery is vacated.

*303 FACTS

On or about November 19, 2004, Defendant, allegedly armed with a shotgun, robbed Brian Lane at his apartment. During the bench trial, Lane testified that he had met Defendant once previously for about an hour and a half when Defendant came to his house with one of Lane's friends. Lane testified that, on the night of the robbery, around 9:00 or 10:00 p.m., Defendant approached Lane as he was arriving home and walking to his door. Another man accompanied Defendant. Lane testified that Defendant asked him for some prescription pain medication that Lane took, and Lane told Defendant that he did not sell pain medication and asked him to step away from his front door. Then, according to Lane, when he started walking into his house, the two men "kind of forced their way in." Lane testified that Defendant then pulled out a shotgun and "cocked it" to show Lane there was a shell in the gun. Lane then clarified that Defendant "pumped" the shotgun rather than cocked it. Lane stated that he did not know a lot about guns, but thought the gun was a "sawed-off" and that the gun had "two barrels at the end of it." Defendant's accomplice then pulled out duct tape and duct taped Lane's arms and legs. They then took Lane's pain medication from his pockets, grabbed his keys and wallet, put on plastic gloves, pulled out some trash can bags that they had brought with them and proceeded to ransack Lane's apartment. Defendant allegedly took Lane's keys and opened a safe that was said to contain nothing but some cheap Mexican jewelry and Lane's graduation tassel. According to Lane's testimony, Lane's wallet only contained about $6.
After allegedly taking a number of items, including DVDs, a Play Station II and an old video system, the robbers put the items into a trash bag and covered it with a comforter that belonged to Lane.
Lane testified that he pleaded with the robbers to give him back his keys, which they did after washing them in the sink. After they left, Lane hopped to his next door neighbor's apartment and banged on the door with his head. The neighbor, Laura Powell, came to the door, cut off the tape and called 911.
Also during his testimony, Lane identified an exhibit consisting of the prescription medications he had been taking, including Methadone, Oxycodone and Soma (a muscle relaxer). According to Lane, he had been on these medications for "a few years." Lane then identified Defendant in the courtroom as one of the men who robbed him. He also indicated that he had previously picked Defendant's picture out of a six-person lineup.
On cross-examination, Lane admitted that he told the police at the scene that Defendant and his partner initially asked if they could come in and use the phone and the bathroom, but he maintained that he told the two men that they could not come inside. Defendant's attorney then questioned Lane as to whether he had told the police that whoever was at his house asked to use the bathroom and then washed their hands in the sink. Lane then stated that he did not believe that that is what he had told the police. When asked about the gun, Lane affirmed that he had indicated the gun was a couple of feet long, that Defendant had kept it under his shirt before pulling it out and that he "only saw the gun for like a minute. . . ."
Lane indicated that he was not on any pain medication at the present time because his insurance had run out; but, prior to that time, he had received medication via prescriptions from Dr. James T. Hill. Lane testified that he received his medication in one-month supplies and that the robbery had taken almost an entire *304 month's supply60 Methadone and 50 Percocet (Oxycodone). Lane admitted that Dr. Hill was giving him 90 Percocet per month at the time and 90 Methadone per month.
Defendant's attorney then asked Lane if he had not told the police that he had $60 in his wallet at the time of the robbery rather than $6. Lane responded, "[m]aybe I did have that much." Lane also admitted that he had given a few of his pills to friends in the past and that he had a drug problem in the past. Finally, when asked if he had told Ms. Powell not to call the police because Lane was "going to take care of it" himself, Lane responded "something to that effect." After a very brief redirect used to emphasize that Lane's medications were prescribed to him for a painful disabling condition, Lane's testimony was complete.
Ms. Powell testified next. She described Lane coming to her apartment that night with tape on his face and hands and telling her that he was robbed at gunpoint. She testified that Lane was "frantic," so she called 911 for him. Ms. Powell further explained that she did not really know Lane other than just to speak to him, that she was not aware he had any medical condition and that he "just seemed very shy, very closed in. . . ." On cross-examination, she could not remember telling the police investigator that Lane had told her not to call the police because he would "take care of it." She admitted, however, that she could have made that statement. When asked if she remembered stating that there was a lot of activity at the apartment, a lot of foot traffic in and out and a lot of shady-looking characters, she did recall saying there were some "shady characters." She did not remember saying there was a lot of foot traffic, but she did notice people at the apartment.
The last witness for the prosecution was Detective James Cromer, who had been assigned to investigate the case. Detective Cromer indicated that Lane had picked Defendant's picture out of a lineup. On cross-examination, Detective Cromer affirmed that he had asked Lane during the investigation if the crime was "a drug deal gone bad" and that Lane had responded in the negative. Detective Cromer also indicated that Ms. Powell had told him on the night of the crime that Lane had told her not to call the police because he would take of it and that Ms. Powell had thought that that was odd. Detective Cromer also indicated that Ms. Powell stated she had no close contact with Lane and thought he was "you know, strange" and that "she had some concerns." According to Detective Cromer, Ms. Powell also indicated that there was a lot of activity at the apartment and lots of foot traffic in and out. Similarly, she had told Detective Cromer there were a lot of shady-looking characters around the apartment.
When asked if Lane had told Detective Cromer that the two men forced their way into the apartment, the following colloquy took place:
A: My recollection is, is that his statement was, is that they asked to use the phone or the bathroom. He said yes, but then he hesitated and said no. At that point, they were all inthey were already inside the living room area.
Q. And they used the phone and the bathroom?
A. If I remember correctly one went to the bathroom. I think he said Mr. Dowden went to the sink which was over there and at that point is when he supposedly turned around and produced the shotgun.
Detective Cromer also indicated that Defendant had said he had $60 in his *305 wallet, but the detective then stated that he was "old and hard of hearing" and that Lane could have said $6. Finally, Detective Cromer indicated that, when Lane came to do his interview, he presented Detective Cromer with a brown paper bag containing a Latex glove that Lane allegedly found at his apartment and believed to belong to Defendant. The glove was never tested for DNA.
On completion of the State's evidence, a motion for directed verdict was made and denied. Defendant then took the stand to testify in his own defense. Defendant, 24 years old at the time, admitted that he had a serious drug problem when he robbed Lane and stated that, for a while, he had obtained drugs from Lane "quite frequently." He admitted to having some prior convictions, but indicated they were all for drug problems and did not involve any violent crimes or crimes involving a gun. He denied owning a shotgun. According to Defendant, after becoming incarcerated, he had taken advantage of various programs offered for his drug abuse problem and had gotten that problem under control. He also had completed parenting classes.
According to Defendant, on the date of the crime, he went to Lane's apartment to get drugs and Lane asked him about the ones that Lane had fronted to Defendant previously. Defendant testified that he told Lane that he did not have the money for him, but he wanted Lane to front him a few more because he had a buyer; however, Lane refused. Allegedly, the man whom Defendant took to Lane's apartment was the person to whom Defendant intended to sell the drugs. Defendant stated that he only knew the man as "BJ." Defendant denied ever threatening Lane with a gun and indicated that BJ had put the duct tape on Lane, although that was not what the two had come to the apartment to do. Defendant indicated that they had gone to Lane's apartment for Xanax; and, although they had taken the drugs, they did not take anything else from Lane. Defendant also denied that BJ had a gun.
On cross-examination, Defendant stated that he had met Lane through a friend named Justin who had told Defendant that he knew where to get some Percocets. On the night of the crime, BJ went with him to Lane's apartment because the two of them were trying to get high; Defendant and BJ had gotten high together about ten times over the course of a few months. Defendant denied going through Lane's things, but admitted taking the pills. He again denied bringing a shotgun to rob Lane and denied that BJ brought a shotgun. According to Defendant, Lane did not fight back when BJ placed the duct tape on him. Defendant admitted knowing that BJ had the duct tape with him when they went to Lane's apartment, but he testified that he did not know BJ was going to use the tape; instead, he was hoping that Lane would go ahead and front a few more pills.
As previously stated, the trial judge found Defendant guilty of armed robbery as charged. The court also concluded that a firearm was used in the commission of the crime.
Defendant, with new counsel, filed a motion for new trial on March 22, 2006. The motion essentially alleged two grounds. First, although Defendant had candidly admitted to simple robbery, Defendant argues that the evidence failed to establish beyond a reasonable doubt that any weapon, much less a firearm, was used in the robbery. The second ground was the existence of new and material evidence, i.e., testimony of two new potential witnesses, that, notwithstanding the exercise of reasonable diligence by Defendant, was not discovered before or during the trial. *306 According to the motion, Jason Ross Spicer had informed Defendant that he was a close acquaintance of Lane and that Lane had indicated to Spicer that Lane did not know whether the robbers were armed or not. Additionally, Danielle Free had informed Defendant that she knew, by her own personal knowledge, that Lane was engaged in trafficking drugs, including Ecstacy.
The hearing on the motion for new trial was held on July 17, 2006. Ms. Free testified that she was the mother of Defendant's minor child. She also indicated that she was acquainted with Lane for about ten years. She stated that she had known Defendant to engage in the use of illicit drugs and that she had actively participated in those activities as well. When asked whether she knew of her own personal knowledge that Lane was involved in either the procurement or the production of illicit drugs, however, the State objected on the grounds that such evidence was easily discoverable given that Ms. Free was the mother of Defendant's child. Defendant's counsel indicated that he could not address whether the evidence was discoverable or not because he was not counsel of record until after the trial. He simply stated that there was no way that he could have discovered it beforehand and that he thought the court was entitled to hear the testimony. The trial judge, however, found the testimony inadmissible, stating that the evidence would not be relevant because, even if Lane were trafficking drugs or using drugs, that would not be relevant to the question of Defendant's guilt or innocence.
Defendant further argued that there were inconsistencies in Lane's testimony concerning the firearm. He submitted that there was no such thing as a shotgun that had two barrels and also was a pump shotgun. He also argued that it made no sense for two men who had the victim outnumbered to need a gun, suggesting that Defendant would not pump the shotgun, thereby ejecting one of the shells. Finally, Defendant attempted to make a plea for sympathy by pointing out that an error concerning guilt could result in Defendant going to prison for 55 years.
To the contrary, the State pointed out that the chamber that held extra shells in a shotgun could cause a victim to feel two "tubes" if a sawed-off shotgun were pointed in a victim's back. Defendant later noted that there was no testimony that anybody put a gun in Lane's back, but that Lane did testify he saw there were two barrels; and, furthermore, barrels, unlike magazine tubes, do not have caps on the end of them.
As noted, the trial court denied the motion for new trial and this appeal followed.

DISCUSSION
Assignments of Error I and III (Verbatim):
Appellant respectfully submits that the trial court erred in the following particulars, to-wit:
I. Finding defendant guilty as charged when the evidence adduced was insufficient to prove defendant's guilt beyond any reasonable doubt;
III. Denying defendant's Motion for New Trial on the basis of La. C. Cr. P. Article 851(1).
Defendant admits to robbing Lane and states that the sole issue is whether the robbery was a simple robbery or an armed robbery. He emphasizes that no physical evidence of the presence or use of a gun was introduced. Thus, the sole evidence for conviction of armed robbery, as opposed to simple robbery, is Lane's testimony. The defense argues that, although such testimony can be sufficient, it must be *307 free of internal contradiction and irreconcilable conflicts with physical evidence. In this case, the defense queries why Defendant would arm himself to rob someone that he knew and could identify him. In addition, the defense notes that, because Defendant and Lane knew each other, it was of no importance that Lane could pick him out of a photographic lineup.
With respect to contradictions in Lane's testimony, Defendant attempts to refer to a Shreveport Police Department narrative supplement found in the record. We note, however, that it does not appear that any of this material was introduced into evidence at the trial. Likewise, he attempts to rely on the narrative report to show that Lane had told the officer arriving on the scene that he was home when the two men came and knocked on his door. The same officer had indicated in the report that Lane had stated he let the two men into his apartment when they asked permission to use the phone and the bathroom. These items, as well as others from the narrative report, would indeed show inconsistencies but for the fact that the narrative report was not introduced into evidence, and the officer who made the report was not called as a witness. Defendant next attacks Lane's description of Defendant ejecting a round from a shotgun and Lane's description of the gun itself.
In summary, Defendant argues that, under the familiar Jackson standard, the evidence is insufficient because the internal contradictions in Lane's testimony would prevent a court from relying solely on that testimony to find Defendant guilty of armed robbery.
In contrast, the State argues that Lane's testimony at trial was clear that he was robbed at gunpoint and that Ms. Powell, who cut the duct tape from him after the robbery, testified that Lane declared at that point and time that he had been robbed at gunpoint and that Lane was scared and upset. The State points out that no one questioned Lane in depth at the trial about the shotgun issue and that Lane admitted he did not know much about guns. The State further argues that, to someone who does not know much about guns, a pump shotgun can look like it has two barrels with the lower barrel being the ammunition chamber. According to the State, under the Jackson standard, credibility issues are present in this case and this court's authority to review questions of fact in a criminal case is limited to sufficiency of the evidence rather than to credibility determinations made by the trier of fact. The State submits that there was sufficient evidence presented to sustain the conviction for armed robbery. We agree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. *308 Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
In the case sub judice, Lane's testimony was clear that a shotgun was used in the commission of the crime, and this testimony was corroborated to some extent by Ms. Powell's testimony that Lane, who appeared very shaken, told her immediately after the robbery that he was robbed at gunpoint. As for the description of the firearm, while the defense makes a good point in this regard, it is possible that Lane simply mistook the sawed-off shotgun as having two barrels because the barrel was sawed off to approximately the same length as the tube that held the shotgun shells. As a person unfamiliar with guns, Lane could have made this mistake, especially if there had been a magazine extension on the gun. Finally, although there are inconsistencies in Lane's version of how the robbers entered his apartment, much of Defendant's argument concerns inconsistencies with respect to the initial police report, which was not entered into evidence. We conclude that the trial court was well within its discretion in its determination to credit Lane's testimony that a firearm was used and to discredit Defendant's testimony in this regard. The evidence was sufficient to sustain the conviction.
Assignment of Error II. (Verbatim)
Appellant respectfully submits that the trial court erred in the following particulars, to-wit:
II. Sustaining the State's objection to the introduction of newly discovered evidence at the hearing on Motion for New Trial when that evidence was clearly admissible, not only to impeach the testimony of the complainant, but would also have been corroborative of defendant's testimony;
Defendant complains that the trial court should not have precluded him from asking Ms. Free about Lane's drug dealing activity. He argues that this resulted in his being unable to demonstrate the time and manner of discovery of the witness's knowledge. Defendant states that, where the evidence is so evenly balanced, with neither him or Lane having any corroborating evidence to support their version of the event, newly discovered evidence of relatively minor importance might be sufficient to create a reasonable doubt. We are not persuaded by Defendant's arguments.
Under the provisions of La. C. Cr. P. art. 851, a motion for new trial is based on the supposition that injustice has been done to the defendant; and unless such is shown to have been the case, the motion shall be denied, no matter upon what allegations it is grounded. Under Article 851(3), one ground for granting a new trial is the availability of new and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, and that, if it had been introduced at the trial, would probably have changed the verdict or judgment of guilty.
In the present case, Defendant failed to show that Ms. Free's testimony could not have been discovered before or during the trial with the exercise of reasonable diligence. Instead, because Ms. Free was Defendant's girlfriend and the mother of *309 his child, it is difficult to imagine how Ms. Free's knowledge of Lane's drug dealing would not have been known to Defendant and have been easily discoverable for use at trial. Furthermore, the State pointed out this problem at the hearing on the motion for new trial and counsel for Defendant was unable to supply any justification or reason for not discovering the evidence prior to trial. Defense counsel stated only that the evidence was "newly discovered" as to him because he was not involved until after the trial.
Furthermore, defense counsel told the court that he had not explored with Ms. Free whether or not she had made the information known to Defendant's former counsel or even to Defendant. Thus, it is difficult to understand how counsel could have properly verified the motion for new trial with respect to its truth and correctness as to discoverability. A defendant should not be able to get around the discoverability requirement by simply changing counsel.
Assignment of Error IV. (Verbatim)
Appellant respectfully submits that the trial court erred in the following particulars, to-wit:
IV. Imposing an unconstitutionally excessive sentence and imposing sentence without taking into consideration mitigating circumstances as required La. C. Cr. P. Article 894.1.
Defendant emphasizes that he is a 25-year old man sentenced to prison until age 60 for the first and only act of violence he ever committed and in which no one was injured. He argues that the trial court's reasons for sentence reveal that the court failed to consider his close relationship with his small two-year-old son, the nature of his prior criminal record and the likelihood of rehabilitation.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2d Cir.1/28/04), 865 So.2d 284, writs denied, 04-0834 (La.3/11/05), 896 So.2d 57 and 04-2380 (La.6/3/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.4/22/04), 873 So.2d 747, writ denied, 04-2606 (La.6/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.3/1/00), 754 So.2d 392, writ denied, 00-1467 (La.2/2/01), 783 So.2d 385.
A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; *310 State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La. App. 2d Cir.4/2/97), 691 So.2d 864.
Under the provisions of La. R.S. 14:64(B), the ordinary sentencing range for armed robbery is not less than 10 and not more than 99 years without benefits. Under the provisions of La. R.S. 15:529.1(A)(1)(a), because Defendant was a second-felony offender, his sentence was required to be for a term of not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. The statutory law, therefore, fixed the minimum sentence for this Defendant (who had a prior felony conviction for possession of Schedule IV, CDS) at 49½ years.
The trial court heard from both of Defendant's parents, as well as Defendant himself. The court then stated that it had taken that testimony into consideration along with the testimony at trial. After noting the seriousness of armed robbery and noting that Defendant's drug use was voluntary, the court also noted that it had taken into consideration the loss of Defendant's aunt who was missing and with whom he apparently had a close relationship.
On this record, we conclude that the trial court adequately indicated its sentencing considerations and that the deviation down from 49½ years to 30 years does not leave a sentence that shocks the conscience or is constitutionally excessive.
We further conclude, however, that the trial court did err in adding the additional 5 years by relying on the provisions of La. C. Cr. P. art. 893.3(B) which states:
B. If the court finds by clear and convincing evidence that the offender actually used a firearm in the commission of the felony or specifically enumerated misdemeanor for which he was convicted, the court shall impose a term of imprisonment of five years; however, if the maximum sentence for the underlying offense is less than five years, the court shall impose the maximum sentence.
The plain wording of this provision addresses the total term of imprisonment, not an "add-on" of time. See also State v. Lee, 02-1793 (La.App. 4th Cir.4/2/03), 844 So.2d 970, writ denied, 03-1247 (La.10/10/03), 855 So.2d 330. In contrast, the provisions of La. R.S. 14:64.3 do provide for an additional five years; but, significantly, Defendant was never charged under that statute. Accordingly, the additional five years is hereby removed from Defendant's sentence.

DECREE
For the foregoing reasons, the conviction and sentence of Defendant Derek M. Dowden for armed robbery are affirmed. The portion of his sentence reflecting an additional five years' imprisonment for use of a firearm is vacated.
CONVICTION AFFIRMED; SENTENCE AMENDED TO VACATE ADDITIONAL FIVE-YEAR SENTENCE AND, AS AMENDED, IS AFFIRMED.