899 So.2d 751 (2005)
STATE of Louisiana, Appellee
v.
Dennis Laine CRENSHAW, Appellant.
No. 39,586-KA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
Rehearing Denied May 5, 2005.
*753 Louisiana Appellate Project by Peggy J. Sullivan, Monroe, Paula Corley Marx, Lafayette, for Appellant.
Paul J. Carmouche, District Attorney, Dale G. Cox, William J. Edwards, Assistant District Attorneys, for Appellee.
Before WILLIAMS, PEATROSS & DREW, JJ.
PEATROSS, J.
A unanimous jury found Dennis Laine Crenshaw ("Defendant") guilty of two counts of vehicular homicide and one count of first degree vehicular negligent injuring, arising out of a traffic accident on March 7, 2002. The trial court imposed fines of $2,000 and sentences of 20 years at hard labor for each of the homicide counts, *754 one year of which must be served without benefits. The court imposed a fine of $2,000 and directed that Defendant serve five years at hard labor for the negligent injuring count.[1] The court ordered all the sentences to be served consecutively. Defendant filed a Motion for Reconsideration of Sentence, urging that the State failed to prove that he was the driver of the vehicle involved, which was denied. Defendant appeals this ruling and further asserts that his sentences are excessive and that he should have been ordered to serve the sentences concurrently.[2] For the reasons set forth herein, Defendant's convictions and sentences are affirmed.

FACTS
The State charged that, on March 7, 2002, Defendant caused the death of Vicki Taylor ("Ms. Taylor") and her son, Lee Anthony Taylor, and that he inflicted serious bodily injury upon Vicki Taylor's daughter, Ashley, while operating a motor vehicle with a blood alcohol concentration over 0.08 percent.
These charges arose from a traffic accident occurring at the intersection of Marshall and Creswell Streets in Shreveport, Louisiana. The victims were in a red vehicle which was stopped at a traffic signal when a white Toyota Supra, allegedly driven by Defendant, struck the rear of their car. Defendant's blood alcohol content was determined to be 0.23 at the time of the accident. An accident reconstruction expert testified that the white car was traveling in excess of 80 m.p.h. at the time of the accident and several witnesses gave testimony indicating that Defendant was intoxicated. Defendant had two prior convictions for DWI and another for careless operation of a vehicle. Defendant now appeals his convictions and sentences.

STANDARD OF REVIEW
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Hunter, 33,066 (La.App.2d Cir.9/27/00), 768 So.2d 687, writs denied, 00-3070 (La.10/26/01), 799 So.2d 1150, 01-2087 (La.4/19/02), 813 So.2d 424.
A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, 02-3090 (La.11/14/03), 858 So.2d 422. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.

DISCUSSION

Assignment of Error One: Did the Evidence Adduced at Trial Support Convictions of Vehicular Homicide and First Degree Vehicular Negligent Injuring? (Sufficiency of the Evidence)
Defendant initially argues that the evidence adduced at trial was insufficient *755 to prove, beyond a reasonable doubt, that he was the driver of the vehicle involved in the accident that led to this litigation. In that regard, he argues that a passenger, Paul Dauman ("Dauman"), was the driver. Defendant further argues that Dauman's testimony against him was not credible and, therefore, cannot support his convictions.
To the contrary, the State argues that the evidence presented was adequate to prove, beyond a reasonable doubt, that Defendant was the driver. We agree.
Vehicular homicide is defined under La. R.S. 14:32.1, stating, in part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists:
(1) The operator is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The operator's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
. . . .
La. R.S. 14:39.2 defines first degree vehicular negligent injuring as:
. . . the inflicting of serious bodily injury upon the person of a human being when caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle . . .
(1) The offender is under the influence of alcoholic beverages.
(2) The offender's blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
. . . .
C. For the purposes of this Section, `serious bodily injury' means bodily injury which involves unconsciousness, extreme pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member or organ or a mental faculty, or substantial risk of death.
Defendant also cites Jackson, supra, stating that a review of the evidence does not support his conviction beyond a reasonable doubt. To this end, he points to the testimony  or perhaps more poignantly, the "holes" in the testimony  given by all three occupants of the offending car on the night in question. He argues that the principal evidence given in this case, i.e. the testimony of Dauman, was riddled with inconsistencies and is not credible.
The State asserts that Defendant's argument ignores a videotape and the testimony of several other witnesses who indicated that Defendant was drunk on the night in question and that he was the driver at the time of the accident. The State began the trial with the testimony of Alice Smith, who, on the night of the collision, was driving the Taylors home from Bible study. Ms. Smith testified that she made a stop at Marshall and Creswell streets in Shreveport and then heard a roaring sound, looked in the rearview mirror and saw lights coming "really, really fast." She further testified that something hit her vehicle and spun it around three times and stopped. Paramedics then arrived on the scene and removed the occupants from the vehicle.
*756 Gertrude Bryant, who lives at the corner of Creswell and Marshall in Shreveport, testified that she was in her front yard when she saw a white car pass by her car (which was parked in the street) "real fast." Ms. Bryant also testified that she heard a "big boom," and then she ran to the scene where she saw that the white car had hit a red car. By the time she got there, a police officer had already arrived at the scene.
Bruce Brock, who also lived nearby, testified that, on the night of this collision, he was in his house and heard a "car with a wide open throttle coming down Marshall Street from the north." As he stood to look, he too heard a "bang" and saw a white car come to a stop at the curb in front of Tommy's Place Bar and another car stopped nearby. Mr. Brock dialed 911, but then saw a police officer pull up at the scene "within a minute" of the crash.
Joseph Garland was at Tommy's Place Bar when the collision occurred and testified that he went to the scene within 30 seconds of hearing the crash. He looked inside the white car and saw two adult males in the front seats and a female in the back. Mr. Garland watched as the male passenger (later identified as Dauman) exited from the white car's sunroof and ran from the scene. He stated that, between the time of the crash and the time that he got to the scene, there was not time for the two men to switch places. The driver eventually got out of the car, stood there for a couple of minutes and then lay down on the ground until emergency vehicles took him and the female passenger away from the scene.
Shreveport police officer T.W. Adgate testified that, at the time of the crash, he had just pulled into an alley behind Tommy's Place Bar. He heard the crash and immediately drove to the street in front of the bar. As Officer Adgate approached the white car, he confirmed that a man (later identified as Dauman) climbed out the sunroof and ran off. He stated that Defendant was in the driver's seat and that there was not enough time for the passenger and the driver to switch places. Officer Adgate further added that Defendant continued to ask worriedly about his car, but showed no remorse about the car he had hit, even after being told that two people in it had been killed.
Once Dauman returned to the scene, he was questioned and he admitted he had been the passenger. He said he had been drinking with Defendant at Central Station, where the latter had become obnoxious and was asked to leave. Dauman also testified that, when the trio left the bar, Defendant "started driving like a maniac" in excess of 70 m.p.h. He stated that Defendant drove into another vehicle and that, after the collision, he ran from the car because he feared an explosion.
Christina Purvis testified that she was at Central Station on the night in question. She stated that Defendant arrived and spent the next few hours drinking, to the point that he "didn't need to be driving." She stated that he was drinking with his girlfriend, Bonnie Lee ("Lee"), and with Dauman.
Jennifer Clark, a bartender at Central Station on the night of this incident, testified that Defendant started drinking vodka and soda between 5:30 and 6:00 p.m. Ms. Clark identified two different glasses, the smaller of which was used to make well drinks and a larger 16-oz. glass which was used for a concoction called a "Mind Eraser."[3] Defendant shared several Mind Erasers with patrons. Ms. Clark cut Defendant off when he fell out of his chair *757 from apparent intoxication. Further, a Central Station security videotape showed that, when Defendant left the bar, he was in the driver's seat of his vehicle.
Troy Burton was also at Central Station that night. He tried to disable Defendant's car to keep him from driving. He corroborated that Defendant became intoxicated, fell off his barstool and was cut off from any other alcoholic consumption by the bartender.
Lee also testified about the events of that evening and stated that Dauman is taller than Defendant, has darker hair and pointed out that there is a 60-pound difference between the two. Lee stated that she and Defendant shared four or five Mind Erasers that night and that she could not remember driving away from the bar or being in the wreck.
Kevin Batts, a forensic criminalist, testified about his analysis of Defendant's blood. The result was a 0.23 concentration of alcohol. Mr. Batts also examined the drawings prepared by the accident reconstruction officers. He determined that Defendant's vehicle was traveling at 80 to 85 m.p.h. at the point of impact.
Dr. Lynn Lloyd, a pediatric intensive care physician, testified that she treated Ashley Taylor. The child sustained numerous injuries, including facial fractures, a broken jaw, a liver laceration, two broken bones on her left arm and an injury to her spine.[4] In sum, she spent 15 days in the hospital.
Defendant, who testified against the advice of counsel, told the jury that, on the day of the accident, the car he was driving belonged to a business associate. He testified to consuming four to six double vodka drinks and three Mind Erasers before leaving the bar. He corroborated that he had too much to drink and fell off his bar stool. Defendant stated that he met Dauman for the first time that night and further acknowledged that he had prior DWI offenses. He testified to having no memory of what happened from the time he fell off the bar stool until he was sitting on the curb after the collision.[5] Defendant further testified that he did not know who was driving at the time of the wreck, but all the witnesses who said they saw him in the driver's seat were either lying or mistaken. The defense then rested and there was no rebuttal.[6] Given the foregoing testimony, *758 the State argues that the jury had ample evidence from which they could conclude that Defendant was the driver. Accordingly, it contends that the convictions and sentences should be upheld. We agree.
The only element at issue here is whether Defendant was the driver of the white car involved in the accident. Even assuming that the trial court's consideration of Dauman's testimony was misplaced, the testimony of every other witness developed at trial uniformly points to Defendant as the driver of the white car. Given the standard of review stated in Jackson, supra, the evidence, viewed in the light most favorable to the prosecution, is sufficient to prove beyond a reasonable doubt that Defendant was the driver of the fatal vehicle. For these reasons, we reject Defendant's first assignment of error.

Assignment of Error Two: Were the Consecutive Sentences Imposed Harsh and Excessive Under the Facts and Circumstances of the Case?
Defendant next argues that the trial court erred by imposing maximum sentences for the offenses and by ordering them to be served consecutively. Defendant reasons that, as a first-felony offender,[7] he does not deserve maximum sentences. Defendant also complains that the trial court did not articulate any reasons for ordering the sentences consecutively. The State argues, by way of contrast, that Defendant has a record of continued alcohol abuse and his refusal to reform makes him a "menace to society." Accordingly, it argues that the trial court was justified in imposing maximum sentences on the Defendant.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State *759 v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); Bradford, supra.
A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.5/12/04), 873 So.2d 939. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
La. C. Cr. P. art. 883 provides that, when two or more convictions arise from the same transaction, or constitute parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. However, the jurisprudence recognizes that it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. State v. Robinson, 33,921 (La.App.2d Cir.11/1/00), 770 So.2d 868; State v. Coleman, 32,906 (La.App.2d Cir.4/5/00) 756 So.2d 1218, writ denied, 787 So.2d 1010 (La.3/23/01); State v. Derry, 516 So.2d 1284 (La.App. 2d Cir.1987), writ denied, 521 So.2d 1168 (La.1988).
This is especially true in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. State v. Walker, 00-3200 (La.10/12/01), 799 So.2d 461; State v. Feaster, 36,868 (La.App.2d Cir.3/5/03), 840 So.2d 675.
This court approved consecutive maximum sentences in a case involving two counts of first degree vehicular negligent injuring. Feaster, supra. This court noted in Feaster, supra, that the defendant was driving without a valid driver's license, he had a history of alcohol-related offenses and his unwillingness to admit he had a substance abuse problem posed a grave risk to the safety of the community.
Another case, more similar to the facts of the case sub judice, affirmed consecutive sentences where the defendant was convicted of vehicular homicide and first degree vehicular negligent injuring. See State v. Hilbun, 36,048 (La.App.2d Cir.6/12/02), 821 So.2d 530. The defendant in Hilbun injured two victims and caused the death of another. He had been involved in prior misdemeanor offenses involving alcohol and the trial court found he was in need of a custodial environment.
In the case sub judice, at sentencing, the trial court heard testimony from Ms. Taylor's mother about the impact of the deaths and injuries on the family. The court also received testimony from Officer Adgate, who said that, after the collision, Defendant was more concerned about his car being totaled than the resulting deaths and injuries to the Taylors.
After argument by both counsel, the court said it had considered the totality of the circumstances surrounding the offenses, the entire PSI report, letters from the victims and family members, a memorandum from defense counsel and Defendant's medical records. The court noted that there were multiple victims and found that there was significant and permanent injury and economic loss. The court considered his statements of remorse and letters written by friends on his behalf. Finally, *760 the court noted that Defendant had three prior convictions for DWI and was in need of correctional treatment and that lesser sentences would deprecate the seriousness of the offenses.
Defendant's record reflects that he is a substantial risk to the safety of the community  this is his fourth drunk driving incident. At the time of this accident, his blood alcohol level was very high, he was operating a vehicle recklessly on city streets at speeds in excess of 80 m.p.h. and he was clearly a risk to the safety of drivers and pedestrians. Based on Defendant's history and the nature of the current offenses, the sentences imposed are not constitutionally excessive. Accordingly, we reject Defendant's argument that his sentences were excessive.
Defendant also argues that the court erred in directing the sentences to be served consecutively or that it erred in not specifically mentioning why the sentences should be served consecutively. In support of this argument, Defendant cites La. C. Cr. P. art. 883, which states:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently. In the case of the concurrent sentence, the judge shall specify, and the court minutes shall reflect, the date from which the sentences are to run concurrently.
Defendant argues that, in the absence of articulated reasons from the trial court justifying his terms being served consecutively, his sentences should be served concurrently. We disagree.
As this court noted in State v. Hampton, 38,017 (La.App.2d Cir.1/28/04), 865 So.2d 284, jurisprudence has moved away from requiring remand under certain circumstances involving the imposition of consecutive sentences without the trial court's having specifically stated reasons therefor. The cases cited in Hampton conclude that the failure to articulate specific reasons for consecutive sentences does not require remand if the record provides an adequate factual basis to support consecutive sentences.
Further, the jurisprudence recognizes that it is within a trial court's discretion to order sentences to run consecutively rather than concurrently. Robinson, supra. Coleman, supra. Derry, supra. This is especially true in cases in which the offender's past criminality or other circumstances in his background justify treating him as a grave risk to the safety of the community. Walker, supra. Feaster, supra.
In the case sub judice, the record reveals that the trial court specifically stated that Defendant was to serve his terms consecutively. At sentencing, the trial court stated, in part:
As to each count of vehicular homicide it is the sentence of this court that Mr. Crenshaw serve 20 years at hard labor, one year which will be without benefit of probation, parole or suspension of sentence.
. . . .
These sentences will run consecutively with each other.
. . . .
On the charge of first degree vehicular negligent injury, it is the sentence of the court that he serve five years at hard labor ... That sentence will run consecutively as well. The sentences will run *761 consecutively with each other. (Emphasis ours.)
Further, Defendant had multiple prior DWI convictions, yet had not sought treatment for his alcoholism until after this fatal collision. His repeated behavior constitutes a continuing danger to the safety of the community; and, given the language of Robinson, supra, and Hampton, supra, the record justifies the imposition of consecutive sentences such that they should not be set aside. Accordingly, we reject Defendant's argument that his sentences should be served concurrently.

ERROR PATENT REVIEW
A complete review of the record reflected no errors patent.

CONCLUSION
For the reasons set forth herein, the convictions and sentences of Defendant, Dennis Laine Crenshaw, are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] These are the maximum sentences possible under the statutes of conviction as in effect at the time of the offenses. La. R.S. 14:32.1 and 14:39.2.
[2] The third assignment of error, dealing with denial of the Motion for Reconsideration of Sentence, was not separately briefed. Assignments of error which are neither briefed nor argued are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied, 558 So.2d 1123 (La.1990).
[3] A Mind Eraser is a mixture of Kahlua, vodka and tonic.
[4] Ashley Taylor, age 13, was also called to the witness stand to show the members of the jury the scars on her neck which were a result of this collision.
[5] Dr. Richard Williams testified regarding alcohol addiction and blackouts and noted that a person could be blacked out and still drive a car.
[6] Among the others who testified in this matter were:

Corporal E.S. Deen, an accident reconstruction for the Shreveport Police Department, testified about the physical details of this collision.
John Johnson, an RN at Christus Schumpert, testified that he drew a blood sample for the police on the night of March 7, 2002.
Corporal Donald Vishnefski testified that he was told to accompany Defendant to the hospital for a blood sample. He described how the sample was taken.
Officer William Vincent testified that he investigated this collision and reconstructed it on a diagram. He determined that the Supra rear-ended the red vehicle. He also took the blood sample to the crime lab.
Dr. George McCormick explained to the jury the results of his anatomical examinations of the victims. He concluded that Lee and Vicki Taylor died of injuries received in a traffic collision.
Brook Ingram, a Shreveport fire fighter and paramedic, responded to the scene of the wreck. She encountered Defendant, whom she identified by name, sitting on a sidewalk. Ms. Ingram asked if he had been driving during the accident, to which he responded, "yes I was." She further indicated that Defendant had injuries to his forearm which indicated that he was driving with one hand on the top of the steering wheel when the airbag deployed.
[7] Defendant's prior DWI convictions were misdemeanors.