## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-1533

**STATE OF LOUISIANA**

**VERSUS**

**MARYLN A. LEBLANC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. CR 116138, DIV. G
HONORABLE DURWOOD CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## J. DAVID PAINTER
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Marc T. Amy, Elizabeth A. Pickett, and J. David Painter, Judges.

**VACATED AND REMANDED.**

Amy, J., dissents and assigns written reasons.

**Alfred F. Boustany, II, Attorney at Law**
**421 West Vermilion Street**
**P.O. Box 4626**
**Lafayette, LA 70502**
**Counsel for Defendant-Appellant:**
    **Maryln A. Leblanc**

**Michael Harson, District Attorney**
**Keith A. Stutes, Assistant District Attorney**
**Office of the District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502**
**Counsel for Appellee:**
    **State of Louisiana**

**PAINTER, Judge.**

Defendant, Maryln A. LeBlanc, appeals the sentence she received in connection with her guilty plea to one count of vehicular homicide and three counts of vehicular negligent injuring. For the following reasons, we vacate the thirty-year sentence imposed on the conviction for vehicular homicide and remand the matter to the trial court for resentencing in accordance with this opinion. Furthermore, we sever Defendant's misdemeanor sentences from this appeal and instruct Defendant that she must file an application seeking supervisory review with this court within thirty days of this ruling should she choose to seek review thereof.

### FACTUAL AND PROCEDURAL BACKGROUND

Whereas Defendant pled guilty, the facts are as recited by the State at the guilty plea hearing, as follows:

> [O]n or about April 21, 2007, in the evening between 7:00 and 8:00, the Hardy family from Port Barre' was traveling by car to a family reunion here in Lafayette Parish.
>
> Michael Hardy was driving. Kyle Hardy was a front seat passenger. Kristy Hardy and Mrs. Genevieve Hardy were the rear seat passengers in the Hardys' 2002 Toyota Camry. These are the four individuals that represent the victims in these first four counts.
>
> They were proceeding southbound on Louisiana Highway 724, otherwise known as South Fieldspan. Mr. Michael Hardy would come to be later examined after the collision as to his blood alcohol content, and he was found to be absolutely free of any alcohol.
>
> The defendant, on the other hand, Maryln LeBlanc, was proceeding northbound on Louisiana Highway 724, again South Fieldspan, in a Jeep Grand Cherokee. Approaching the Hardy vehicle, she was driving rapidly, speeding, and recklessly.
>
> There were actually three vehicles in the Hardy family caravan going to the family function. Michael was driving the lead vehicle. Michael had turned off of Highway 90 onto Highway 724 proceeding south when the defendant's vehicle, driving erratically, veered onto and into the edge of the side ditch and came out of the ditch and straightened

1

up and then abruptly crossed into the southbound lane in which the Hardy vehicle was proceeding.

Mr. Hardy, Michael Hardy, tried to swerve to the right in an attempt to miss the defendant's vehicle, but due to the speed and the erratic driving of the defendant, the defendant's Jeep struck violently the driver's side of the Hardy Camry, spinning the Camry out of control into the side ditch and onto the south--off of the southbound lane, coming to rest there. The violent collision resulted in the death of Mrs. Genvieve Hardy and serious bodily injury to Kyle Hardy, Kristy Hardy, and Michael Hardy.

. . . .

She turned onto 343 and proceeded south, where she was eventually stopped by the Lafayette Parish Sheriff's Office patrol units.

She exhibited slurred speech and glossy red eyes. She performed extremely poorly on the field sobriety test. Samples were taken from the defendant and were analyzed by the Louisiana State Police Crime Lab. Her samples were found to contain--her body samples were found to contain methadone, meprobamate, hydrocodone, cocaine, diazepam, and marijuana. . . .

Defendant was charged by bill of information with one count of vehicular homicide, a violation of La.R.S. 14:32.1, three counts of vehicular negligent injuring, violations of La.R.S. 14:39.1, one count of operating a vehicle while intoxicated, a violation of La.R.S. 14:98, one count of possession of a controlled dangerous substance, Schedule II, a violation of La.R.S. 40:967, one count of possession of a controlled dangerous substance, Schedule I, a violation of La.R.S. 40:966, one count of reckless operation of a vehicle, a violation of La.R.S. 14:99, two counts of hit-and-run driving, violations of La.R.S. 14:100, one count of failure to conform to required position and method of turning at intersections, a violation of La.R.S. 32:101(C), and one count of failure to have driver's license in immediate possession when driving, a violation of La.R.S. 32:411(D).

On March 13, 2008, Defendant pled guilty to one count of vehicular homicide and three counts of vehicular negligent injuring. The remaining charges were dismissed. The trial court ordered a presentence investigation report. Defendant was sentenced on September 8, 2008, to the maximum sentence of thirty years at hard labor with three years to be served without the benefit of parole, probation or suspension of sentence on the conviction for vehicular homicide, and the maximum sentence of six months on each of the three counts of vehicular negligent injuring, to be served concurrently with each other and with the thirty-year sentence. Defendant filed a "Motion to Reconsider Sentence," alleging an excessive sentence. The motion was denied without a hearing or written reasons.

Defendant now appeals asserting that the maximum sentence of thirty years is constitutionally excessive under the circumstances of the case. For the following reasons, we agree.

## DISCUSSION

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. Although we recognize that there are two errors patent, these errors are precluded from review for the following reasons.

First, there is a misjoinder of offenses in the bill of indictment. Counts 1 and 6 of the bill of information are punishable by imprisonment with or without hard labor, and are thus triable by a jury of six, all of whom must concur to render a verdict. La.Code Crim.P. art. 782, La.R.S. 14:32.1 and La.R.S. 40:967. The remaining counts of the twelve count bill are to be tried by the court without a jury. La.Code Crim.P. art. 779. Louisiana Code of Criminal Procedure Article 493

3

provides for the joinder of offenses in a single bill under limited circumstances if the offenses joined are triable by the same mode of trial. Consequently, Counts 1 and 6 were improperly joined with the remaining counts. However, the Defendant did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. La.Code Crim.P. art. 495. Additionally, by entering an unqualified guilty plea, the Defendant waived review of this non-jurisdictional pre-plea defect. *See State v. Crosby*, 338 So.2d 584 (La.1976). Thus, this error is precluded from review.

Second, the trial court failed to impose a mandatory fine. Louisiana Revised Statutes 14:32.1(B) requires the imposition of a fine of not less than two thousand dollars nor more than fifteen thousand dollars. The trial court's failure to impose a mandatory fine in this case renders the Defendant's sentence illegally lenient. However, the error is not raised by Defendant, and we will not address it herein.

We next address a procedural issue. The Defendant entered a plea of guilty to Counts 1 through 4. Because Counts 2-4, vehicular negligent injuring, were not triable by jury, the proper mode of appellate review for these offenses is an application for writ of review, rather than an appeal. La.Code Crim.P. art. 912.1.

Defendant has not challenged her misdemeanor convictions. Her only assignment of error concerns the alleged excessiveness of her sentence, and her argument refers specifically to her sentence for vehicular homicide. Therefore, we hereby sever the misdemeanors from this appeal and instruct the Defendant that if she chooses to seek review of the misdemeanors, she must file an application seeking supervisory review with this court within thirty days of the court's ruling on appeal.

4

*See State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084.

*Excessive Sentence Claim*

Defendant argues that the sentence of thirty years is unconstitutionally excessive. She argues that maximum sentences are reserved for the worst of offenders, and compared to sentences imposed for similar crimes by this court and other courts wherein similarly situated offenders received lesser sentences, she should not have been sentenced to the maximum of thirty years at hard labor.

Vehicular homicide is punishable by imprisonment "with or without hard labor for not less than five years nor more than thirty years." La.R.S. 14:32.1(B). Defendant received the maximum term of imprisonment.

In *State v. Barling,* 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331, this court discussed what constituted an excessive sentence as follows:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

5

While discussing a maximum sentence imposed for a conviction of vehicular homicide, this court in *State v. Morain,* 07-1207, p. 7 (La.App. 3 Cir. 4/2/08), 981 So.2d 66, 70 (alteration in original), stated:

> It is apparent that a reviewing court should consider sentences imposed by other courts to provide consistency in the punishment for similar crimes for similarly situated offenders. Before addressing other opinions, we are reminded of a seminal sentencing precept: "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood,* 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 255.

In the current case, at the sentencing hearing, the trial court summarized the presentence investigation report, noting that it did not appear from the report that Defendant acknowledged that the drugs she had taken was the cause of the accident. According to the report, she said that she had an altercation with a person and if that had not happened, she would not have been so reckless. The trial court noted that Defendant had reported that her problem with drugs began following a car accident in which she was injured and that she began taking Lortab and Xanax for the pain. Defendant had received treatment at the methadone clinic in Breaux Bridge, but the treatment was not successful. The report also indicated that she had attempted to get treatment from other local facilities, but her addiction was not considered severe enough in one clinic, and she could not afford the services in another clinic. The trial court also noted that she was a first-time felony offender.

The trial court placed into the record several letters written by the deceased victim's family and friends extolling the victim's admirable attributes. Also introduced into the record were several letters written by Defendant's family and friends extolling her virtues and their thoughts on why she had such a problem with drugs. Included in the record was a letter from Defendant acknowledging her

problem with drugs and expressing her remorse that her actions caused the death of Mrs. Hardy.

At the sentencing hearing, the deceased victim's husband, Michael, and three adult sons, Christopher, Kyle, and Justin, testified regarding the deceased victim and how devastating her death was to them and the rest of her family. Kyle, who was in the vehicle and suffered serious injuries, testified that a witness "said that, after she [Defendant] hit us and took off, that she was smiling, just smiling like it was a game, just took somebody's life and it was like a game."

Defendant's family also testified at the hearing. Glenward and Chris Allemond testified that their sister had a normal, happy childhood and that she was always the bright light of the family until her second bad marriage and a car accident. Her current husband, who also had drug problems, was seldom home, and he did not give her any support.

Stephanie Allemond LaFleur, Defendant's sister, corroborated her brothers' testimonies. She further stated that she knew Defendant had been in a fight that day. She testified as follows:

> And I know that she had went to some friends' house. . . . And I know she left there running for her life, and she probably was on pain pills, and she probably was on methadone, because she had been going to the methadone clinic to try to get off the pain pills; but her pain that was causing her back pain so much and her depression from her husband never being there when she needed him, so what was she to do? She had a child that she didn't know what to do. [Sic.]
>
> So I know that day, you know, she was probably on something, and I'm not here to say she wasn't, but I know she was also scared. She was running for her life. And she would have never just hit the person and took off running and threw her hands up laughing. That would have never been Maryln. Maryln is the person that wouldn't kill a flea. I mean, out of all five of us, she was the person that you could--I mean, she would cry for anything. I mean, that's how much she loved everybody.

7

Doctor John Khorsandi, whose field of practice was family medicine, testified that he had been treating Defendant since 2002.  He stated that he saw her only a few times the first year and that her visits increased as time went on.  He stated that she complained mostly of anxiety as well as some lower back pain.  He diagnosed her as suffering from depression.  He prescribed multiple medications for anxiety, including Effexor, Cymbalta, and Xanax, as well as Lortabs for pain.  Of the drugs that were determined to be in her system the day of the accident, he stated that several were derivatives of the drugs he had prescribed for her.

Finally, Defendant's two sons, Nicholas, eighteen, and Dillon, fourteen, testified regarding their mother and the pain they felt at her loss from being incarcerated since the accident.

Following testimony, the trial court stated, in pertinent part:

> In determining whether someone gets the minimum or the maximum or somewhere in between, the general principle that courts follow is that the minimum sentence is reserved for those instances of this particular crime that occur in the least egregious way or the least serious or offensive way, and the maximum sentence is reserved for those crimes that appear to be the worst way that this particular crime can be committed, the most egregious, the most serious.  Everything else is in between.

> What I have here today is a situation where there have been the most serious consequences that there can be, a death.  It doesn't get any more serious than that.  The families have discussed the issue of – and I have read in the report that 30 years, even 30 years as a maximum seems light in exchange for a life.  That is not the purpose of the law, is to even out the tragedies.  [Sic.]

> The reason, if you want to know, why this particular law is not life imprisonment, as murder would be, or some other crimes would be, is because, by its very definition, it is a crime of negligence, gross negligence, not intentional acts. And that's the difference. Of course, the reason that it's not lighter, vehicular homicide, one of the --by definition, vehicular homicide is gross negligence which can be caused by the influence of alcohol or drugs.

8

And the reason it's not lighter than it is when people say, well, it wasn't my fault, it was the drug's fault, it was the alcohol's fault, or I didn't do it intentionally, I didn't mean to do it, is the seriousness of it. By the word homicide, someone lost their life. So that's why the legislature has seen fit to give that range of sentencing.

The trial court then discussed the sentencing guidelines and what factors to consider to determine whether the person being sentenced should be incarcerated. He stated that there was an "extreme" risk that Defendant "would fall right back into the lifestyle that she was in before." He determined that Defendant was in need of correctional treatment "that can be provided most effectively by commitment to an institution." Finally, the trial court stated that "a lesser sentence would deprecate the seriousness of the crime." Other factors the trial court considered were that Defendant "knowingly created a risk of death or great bodily harm to more than one person . . . including yourself," and that there was permanent injury and significant economic loss to the family of the deceased victim. The trial court noted that Defendant had no prior history of delinquency or criminal activity and had led a law-abiding life prior to the accident.

The trial court then summarized the factual details of the incident and the subsequent discovery of marijuana and cocaine in her vehicle, which, he stated, "shows a reckless disregard for her own life and for the lives of others, and that's what I am trying to emphasize in this case." He then decreed that the only punishment that "can fit the crime in this particular case" was the maximum sentence.

In her brief, Defendant argues that there was no evidence other than what the deceased victim's son and husband had said about witnesses alleging that Defendant was smiling as she drove away from the accident. Defendant further argues:

The other point that stands out is that this crime caused a death and the sentencing judge found that point significant. But, should that

fact have any bearing on whether to impose the maximum sentence. Every vehicular homicide necessarily involves a death. After noting that this "is a situation where there have been the most serious consequences that there can be, a death," the lower court concluded that "the punishment must fit the crime" and that "the only punishment that can fit the crime in this particular case, everything considered, is going to be the maximum sentence."

The fact of a death is not an aggravating circumstance. It is simply a sad fact and an essential element of every crime of vehicular homicide.

Defendant points to *Morain*, wherein this court held that "the trial court abused its discretion in imposing a maximum sentence for Defendant's vehicular homicide conviction." *Morain*, 981 So.2d at 73. In *Morain*, a seventeen-year-old had pulled over on the highway to fix a flat tire. His stepfather, mother, and two siblings showed up to help. Morain veered onto the shoulder and struck the group, killing the seventeen-year-old and seriously injuring his stepfather. Morain's blood alcohol content was measured at 0.10g, a little over the legal limit. The trial court sentenced Morain to twenty years imprisonment, with the first eight years to be served without the benefit of parole, probation or suspension of sentence. At the time, twenty years was the maximum sentence for the offense of vehicular homicide.

In *Morain*, the trial court noted:

> In addition, I've considered the additional mitigating factors of posttraumatic stress disorder, severe depression, continuing substance abuse problems and various health problems that have been suffered. As part of this analysis I've also had to consider the aggravating factors. Mr. Morain continued to drive in the fact of a known alcohol problem. Almost an entire family was present when Evan was killed. Single handedly Mr. Morain destroyed a family and a circle of friends, and his own family. There are terrible consequences when you choose to drink and drive.

*Id.* at 69.

10

While discussing Morain's maximum sentence, this court stated:

> In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, we have held that:
>
>> [A]n appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith,* 99-0606 (La.7/6/00), 766 So.2d 501.While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied,* 03-0562 (La. 5/30/03), 845 So.2d 1061.

In *State v. Whatley,* 06-316 (La.App. 3 Cir. 11/2/06), 943 So.2d 601, *writ denied*, 06-2826 (La.8/31/07), 962 So.2d 424, we discussed the factors that a reviewing court should consider in determining if a trial court abused its discretion in imposing a sentence. In *Whatley*, citing *State v. Lisotta,* 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied,* 99-0433 (La.6/25/99), 745 So.2d 1183, we annunciated three factors that a reviewing court should take into consideration in abuse of discretion cases: (1) the nature of the crime; (2) the nature and background of the offender; and (3) the sentence imposed for similar crimes by the same court and other courts.

In following the guidelines of *Lisotta,* the nature of the offense in the instant matter is vehicular homicide, a violation of La.R.S. 14:32.1, which now carries a maximum sentence of thirty years at hard labor, but as we have stated, the maximum sentence was only twenty years at the time of the offense. Unquestionably, the legislature intended to convey the serious nature of the offense by the severity of the punishment at the time of the offense and by substantially increasing the punishment only months after the crime occurred in this case. Certainly, this is a serious crime as was so articulately explained by the trial court in its sentencing of Defendant. Death and serious injury was visited upon a family in their full view. There is no measure of punishment to this defendant that can erase this crime, ease their pain, or comfort this family.

Our review of the second prong of the *Lisotta* guidelines reflects that Defendant had no criminal history, raised two daughters as a single parent, and served a tour of duty in Vietnam as a member of the armed forces. He had no prior DWI charges or offenses, was employed as a police officer in Baton Rouge for ten-and-a-half years, suffers from post-traumatic stress disorder, severe depression, various health problems, and has a drinking problem. His blood alcoholic content was marginally over the legal limit. Furthermore, Defendant accepted accountability for his conduct and showed great remorse for the consequences of his misconduct. Clearly, Defendant is not the worst type of offender for whom the maximum sentences are reserved.

Finally, we will address the third *Lisotta* factor by reviewing the sentences imposed for similar crimes by our trial courts. It is apparent that a reviewing court should consider sentences imposed by other courts to provide consistency in the punishment for similar crimes for similarly situated offenders. Before addressing other opinions, we are reminded of a seminal sentencing precept: "[m]aximum sentences are reserved for the most serious violations and the worst offenders." *State v. Farhood,* 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225.

*Id.* at 70.

This court in *Morain*, while discussing the third *Lisotta* factor, reviewed two cases of vehicular homicide wherein the maximum and near maximum sentences were not excessive under the circumstances. In *State v. Crenshaw,* 39,586 (La.App. 2 Cir. 4/6/05), 899 So.2d 751, *writ denied*, 05-1531 (La. 1/27/06), 922 So.2d 544, the second circuit found Crenshaw to be the worst type of offender for whom the twenty-year maximum sentence was reserved. While driving intoxicated, he caused the death of two persons and injured another, had a blood alcohol content almost three times the legal limit, showed no remorse after the accident, was driving at speeds of eighty miles per hour on city streets, and had two prior DWI convictions and a conviction for reckless driving. In *State v. Cullipher*, 02-390 (La.App. 3 Cir. 10/2/02), 827 So.2d 589, this court did not find a fifteen-year sentence with five years suspended excessive when the maximum sentence was twenty years. The offender had a prior DWI, had been drinking all day and into the night, and despite drinking so much he

became ill, he ignored pleas from his wife to let her drive him home and insisted on driving himself. Distinguishing these two cases from the situation in *Morain*, this court noted:

> Clearly, *Crenshaw* and *Cullipher* are distinguishable from the case at bar. Both of the defendants in those cases were much more serious offenders than Defendant herein. In the instant matter, Defendant's blood alcohol content was just slightly over the legal limit, he showed remorse for the consequences of his conduct, had no prior DWI convictions, and had not been involved in any other criminal activity. Furthermore, in *Cullipher*, even in light of his past conduct and the gravity of the vehicular homicide offense, he did not receive the maximum sentence of twenty years.

*Morain,* 981 So.2d at 71.

In *Morain*, following the analysis of the nature of the offense, the nature and background of the offender, and sentences imposed for similar crimes by the same court and other courts, this court stated that "[w]hile this is a tragic and unforgivable accident, based on the foregoing analysis where offenders received maximum sentences, Defendant's conduct and offense contrast notably from the others. Accordingly, we find that Defendant was not the worst type of offender for whom maximum sentences are typically reserved." *Morain,* 981 So.2d at 72-73.

We find that, as in *Morain,* Defendant is not the worst type of offender for whom maximum sentences are reserved. Testimony established that Defendant did not have a problem with drugs until five to eight years prior to the accident which killed Mrs. Hardy. Prior to her own injury in a car accident, she had no problems with the law and was not involved in illegal activity. She became addicted to pain killers and suffered depression due to her bad second marriage and her inability to overcome her addiction. Defendant was also raising two sons, virtually on her own, during this time.

13

Notably, in *Morain*, the trial court considered Morain's depression, health problems, and alcohol abuse as mitigating factors. In the current case, the trial court did not appear to consider Defendant's health problems and continuing substance abuse as mitigating factors but rather ignored the cause of her substance abuse and her attempts to get help for the problem. The only mitigating factor the trial court mentioned was that Defendant had no prior criminal record.

More recently, this court did not find a sixteen-year sentence imposed on a first-time felony offender excessive. This court agreed with the trial court that "in light of Defendant's blood alcohol concentration of twice the legal limit at the time of the offense, and the fact that his actions resulted in the death of a human being and serious bodily injury to two others, the trial court determined that any lesser sentence would deprecate the seriousness of the offense." *State v. Kotrla,* 08-364, p. 6 (La.App. 3 Cir. 11/5/08), 996 So.2d 1224, 1228.

A sentence of twenty years out of a possible thirty years was not found to be excessive in *State v. Barber,* 42,548 (La.App. 2 Cir. 10/24/07), 968 So.2d 829, wherein Barber, after he struck and killed a truck driver standing beside the roadway, fled the scene on foot. He attempted to get his wife to lie for him regarding the accident. Although he admitted he was intoxicated at the time, because he was not arrested until several days later, there was no indication of how drunk he was. However, there was testimony that prior to the accident he was seen drinking excessively, and he had two prior DWIs, one of which he was still on probation for when the accident occurred.

The trial court is in the best position to determine the aggravating and mitigating circumstances in order to particularize the sentence. *State v. Cook,* 95-

2784 (La. 5/31/96), 674 So.2d 957, *cert. denied,* 519 U.S. 1043, 117 S.Ct. 615 (1996). Furthermore, a sentence shall not be set aside as excessive absent a showing of manifest abuse of discretion by the imposing judge. However, considering the nature of the crime, the nature and background of Defendant, and the sentences imposed for similar crimes by the same court and other courts, Defendant is not the worst of offenders for whom maximum sentences are reserved. Where maximum sentences were affirmed, the offenders had prior DWI violations and continued to drink and drive, or had records of other criminal offenses, or both, and they exhibited no remorse for their victims. In cases where the offenders were guilty of driving intoxicated and causing accidents in which deaths resulted, and who were either first-time felony offenders or whose criminal history was minor, the sentences tended to be only one-half to three-quarters of the maximum sentences. Finally, in the two recent cases, *Kotrla* and *Barber,* wherein the offenses occurred after the maximum punishment was increased to thirty years imprisonment, under circumstances similar to the current case, the sentences imposed were one year more than one-half the maximum in the case of *Kotrla,* a first-time felony offender, and two-thirds of the maximum in the case of *Barber*, who hid for several days after the accident, attempted to get his wife to lie for him, and had two prior DWIs.

Therefore, we find that the trial court abused its discretion when it sentenced Defendant to the maximum without adequate consideration of the circumstances in the case. Defendant was a first-time felony offender. She admitted that she had taken various drugs on the day of the accident. She pled guilty, thereby taking some responsibility for her actions. Testimony established that she had taken steps to try and fight the addiction. While the trial court correctly determined that Defendant was

15

in need of treatment and that the seriousness of the offense required incarceration, we find that the circumstances of her case indicate that a lesser sentence would have served the same purpose. Thus, we find that the maximum sentence of thirty years in this case is grossly disproportionate to the severity of the crime and is nothing more than a needless imposition of pain and suffering.

## DECREE

We hereby sever Defendant's misdemeanor sentences on the conviction for the three counts of vehicular negligent injuring and instruct Defendant that she must file an application seeking supervisory review thereof with this court within thirty days of this opinion if she chooses to seek review of the misdemeanor sentences. Finding that the maximum sentence of thirty years on the conviction for vehicular homicide is grossly disproportionate to the severity of the crime in this case, we vacate said sentence and remand the matter to the trial court for resentencing in accordance with this opinion.

**VACATED AND REMANDED.**

NUMBER 08-1533

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA


STATE OF LOUISIANA

VERSUS

MARYLN A. LEBLANC

AMY, J., dissenting.

I respectfully dissent from the majority's view that the thirty-year sentence imposed for vehicular homicide is excessive. As explained by the State in its presentation of the underlying facts at the plea hearing, toxicology results indicated that the defendant's system contained "methadone, meprobamate, hydrocodone, cocaine, diazepam, and marijuana" at the time of the accident. Thus, not only was the defendant under the influence of a number of prescription medications that were arguably available to her, but she was also under the influence of cocaine and marijuana. The trial court remarked on this combination of substances, noting that the defendant had a "cocktail of drugs in her system." Further, quantities of cocaine and marijuana were found in the defendant's vehicle at the time she was stopped. These factors, in my opinion, differentiate the criminal aspect of the defendant's behavior from other cases wherein the maximum sentence was found inappropriate for vehicular homicide defendants with elevated blood alcohol levels. *See, e.g., State v. Morain*, 07-1207 (La.App. 3 Cir. 4/2/08), 981 So.2d 66. Also, the trial court found significance in the defendant's flight from the scene and the fact that she only stopped after a police chase onto a highway. The trial court concluded that these circumstances demonstrated the defendant's reckless disregard for her life and those of others. In light of these factors, I find no abuse of the trial court's discretion in imposing the maximum period of incarceration.